Edwin J. ACKER, as Administrator of the Estate of Michael A. Acker, Edwin J. Acker, and Frances M. Acker, Individually, Plaintiffs Below, Appellants,

v.

S.W. CANTINAS, INC., trading as Santa Fe Bar and Grill Restaurant, and Boulden Buses, Inc., Defendants Below, Appellees.

Supreme Court of Delaware.

Submitted: Dec. 18, 1990.
Decided: Feb. 4, 1991.

Morton Richard Kimmel (argued), and William R. Peltz, Kimmel, Weiss & Carter, P.A., Wilmington, for appellants.

John C. Phillips, Jr. (argued), and R. Stokes Nolte, Phillips & Snyder, P.A., Wilmington, for appellee S.W. Cantinas, Inc., trading as Santa Fe Bar and Grill Restaurant.

Richard Galperin (argued), and Lisa B. Zucker, Morris, James, Hitchens & Williams, Wilmington, for appellee Boulden Buses, Inc.

Before MOORE, WALSH and HOLLAND, JJ.

HOLLAND, Justice:

The plaintiffs-appellants, Edwin J. Acker, as administrator of the estate of Michael A. Acker, Edwin J. Acker, and Frances M. Acker, individually, ("Ackers") filed a complaint in the Superior Court in and for New Castle County against *inter alia* the defendants-appellees, S.W. Cantinas, Inc., trading as Santa Fe Bar and Grill Restaurant ("Santa Fe") and Boulden Buses, Inc. ("Boulden"). The complaint alleged that all of the named defendants were liable for the death of Michael A. Acker, who died as a result of a motor vehicle accident involving the defendant John C. Wise ("Wise"). The Superior Court dismissed the Ackers' claims against Santa Fe and Boulden. The Superior Court held that, as a matter of Delaware law, there was not any statutory or common law cause of action which would support the Ackers' claims against Santa Fe and Boulden. We affirm that decision.

*Facts*

The parties are in substantial agreement concerning the underlying facts. On June 2, 1986, Santa Fe sponsored a bus trip to watch the Philadelphia Phillies play base-

ball at Veterans Stadium in Philadelphia, Pennsylvania. Santa Fe charged each patron $25.00 for bus transportation to and from the baseball game, a ticket to the game, food, and all the beer and soda each patron could drink. Santa Fe chartered a bus, owned and operated by Boulden, to pick up the patrons at Santa Fe and take them to and from the game.

Approximately one week before the game, Wise purchased tickets from Santa Fe for himself and three friends. In the early afternoon on the day of the trip, Wise drank one or two beers while repairing a car. Thereafter, at approximately four o'clock, Wise picked up a friend and drove to the Santa Fe located in the Fairfax Shopping Center. While at the Santa Fe, waiting to leave for the game, Wise drank approximately four glasses of draft beer. Wise boarded the Boulden bus when it arrived in the Santa Fe parking lot.

Santa Fe personnel had prepared barbecued chicken, grilled ribs, grilled chicken and potato salad for the patrons. This food, along with snacks, soda and fifteen cases of beer, was loaded onto the bus. A person would serve himself on the bus if he wanted beer or soda. The record reflects that during the ride to Philadelphia, Wise drank approximately four cans of beer.

When the bus arrived at Veterans Stadium, Santa Fe personnel organized a barbecue in the parking lot. They grilled and served the food which had been brought with them on the bus. The barbecue lasted about one and one-half hours. During this time, Wise ate a plate of food and drank approximately four cans of beer. After the barbecue, according to the testimony of the Santa Fe personnel, the soda was returned to the bus, but the unused cases of beer were put in their own vehicles, instead of back on the bus, because "the beer was for the way up. [Santa Fe] didn't plan to have the beer for the way back."

During the game, Wise drank "two or three beers" purchased from the Veterans Stadium's vendors. When the baseball game ended, Wise and the other Santa Fe patrons returned to the Boulden bus and rode home. The bus arrived back at Santa Fe at approximately 11:45 p.m. on June 2, 1986. Wise ordered another beer in the Santa Fe restaurant.

Wise left Santa Fe and proceeded to drive a friend home. Wise disregarded a red light at the intersection of Marsh and Grubb Roads. The motor vehicle operated by Wise collided with a vehicle being operated by Stephen Clark. The collision resulted in the death of Michael A. Acker, who was a passenger in Clark's vehicle. The collision occurred on June 3, 1986, at approximately 12:12 a.m.

### Statutory Liability

The Ackers' first contention on appeal is that the violations of 4 *Del.C.* § 903(2) by Santa Fe, in selling alcoholic beverages off its licensed premises, and 4 *Del.C.* §§ 721 and 722, in the transportation of alcoholic beverages by Santa Fe and Boulden, are negligence *per se*. This Court has held that violations of 4 *Del.C.* §§ 711 and 713 do not constitute negligence *per se* and do not form the basis for civil liability in Delaware. *Wright v. Moffitt*, Del.Supr., 437 A.2d 554, 557 (1981). That holding was reaffirmed in both *Samson v. Smith*, Del. Supr., 560 A.2d 1024 (1989), and *Oakes v. Megaw*, Del.Supr., 565 A.2d 914 (1989).

In the present appeal, the Ackers' premise their negligence *per se* argument on violations of different sections of the Alcoholic Beverage Control Act, 4 *Del.C.* §§ 721, 722 and 903(2). However, in *Wright*, after tracing the legislative history of Sections 711 and 713, this Court noted generally that:

[S]everal General Assemblies have been aware that a civil cause of action can be created for violation of the pertinent provisions of the Alcoholic Beverage Control Act; enactment on a limited basis [in earlier versions of the Code] ... strongly suggests an intention to limit such a remedy to those specific Sections. Then, the elimination of even those remedies for violations of the Act implies an intention that the criminal penalties and the administrative remedies were intended to be exclusive.

*Wright v. Moffitt*, 437 A.2d at 559. We find that the same reasoning applies to the Ackers' arguments based upon the violations of 4 *Del.C.* §§ 721, 722 and 903(2). Accordingly, the first issue raised by the Ackers in this appeal cannot prevail.

### Common Law

■ The Ackers' second argument on appeal is that the Superior Court erred, as a matter of law, in granting Santa Fe's and Boulden's motions for summary judgment. According to the Ackers, "there is a common law cause of action based upon negligence and/or wanton conduct where, in the unique factual circumstances of the case at bar, a commercial vendor, acting as a social host, knowingly and recklessly sells and/or furnishes alcoholic beverages to an intoxicated person off its premises, knowing that person is going to drive, who then injures an innocent third party in a motor vehicle accident." Thus, the Ackers ask this Court to consider, once again, "[w]hether there is a valid cause of action, sounding in negligence or in willful and wanton conduct, against a commercial vendor of alcohol by a third party, injured by the actions of an intoxicated driver who was served by the vendor...." *Samson v. Smith*, 560 A.2d at 1025.

This Court has consistently held that there is no such common law liability under Delaware law. *Wright v. Moffitt*, Del. Supr., 437 A.2d 554 (1981); *Samson v. Smith*, Del.Supr., 560 A.2d 1024 (1989); *Oakes v. Megaw*, Del.Supr., 565 A.2d 914 (1989).[1] This Court's reasoning has been the same in each of these cases: "the creation of a cause of action against one who is licensed to sell alcoholic beverages, under the circumstances alleged ..., involves public policy considerations which can best be considered by the General Assembly." *Wright v. Moffitt*, 437 A.2d at 556. Consequently, the Superior Court concluded that the decisions of this Court compelled the

dismissal of the Ackers' complaint against Santa Fe and Boulden.

In an attempt to distinguish this Court's prior precedents in *Wright, Samson,* and *Oakes,* the Ackers argue that the case *sub judice* is analogous to *DiOssi v. Maroney,* Del.Supr., 548 A.2d 1361 (1988). The Ackers contend that in this case, as in *DiOssi,* an unreasonable hazard was created by serving alcohol to an already intoxicated person. However, as the Ackers themselves acknowledge, this Court's holding in *DiOssi* was founded upon and limited to premises liability. In *DiOssi,* this Court implicitly recognized the inapplicability of its holding to a commercial vendor of alcohol, stating:

> It is argued that the liability of a social host dispensing alcoholic beverages should, as a matter of policy, be no greater than that of a commercial dispenser. The liability of commercial vendors of alcohol, however, has been traditionally treated through judicial deference to legislative action or inaction. Since state regulation of the commercial dispensing of alcohol is the norm, the lack of statutorily imposed liability through "Dram Shop Acts" or comparable legislation mitigates against the creation of such a cause of action on common law grounds. Delaware has no "Dram Shop Act" and, as this Court noted in *Wright,* the desirability of such a measure is a matter for the General Assembly.... The liability of the social host has not been the subject of such purposeful statutory regulation.

*DiOssi v. Maroney,* 548 A.2d at 1364. Thereafter, this Court expressly stated that *DiOssi* "did not create a cause of action directed against the activities of commercial sellers of alcoholic beverages." *Samson v. Smith,* 560 A.2d at 1027.

In an effort to distinguish this case even from *DiOssi,* the Ackers argue that Santa Fe was a commercial vendor acting as social host and is thus liable for Wise's mis-

---

1. In *Wright,* the Court declined to impose liability on a tavern owner for injuries sustained by an intoxicated patron after leaving the bar. In *Samson,* the plaintiff was a third party injured by an intoxicated adult patron of the defendant tavern, off of the tavern's premises. In *Oakes,* the plaintiff was a third party injured by an intoxicated minor patron of the defendant commercial vendor, off of the commercial vendor's premises.

conduct. The record reflects that Santa Fe is a licensed commercial vendor of alcohol. Wise purchased four tickets from Santa Fe. Thus, Wise conferred an economic benefit on Santa Fe. Consequently, Wise was not a "guest" of Santa Fe. *Facciolo v. Facciolo Constr. Co.*, Del.Supr., 317 A.2d 27, 28 (1974). Since Wise was a patron of Santa Fe, rather than a guest, Santa Fe was not Wise's social host. *See Samson v. Smith*, 560 A.2d at 1027.

The Ackers' final theory of common law liability is that Santa Fe and Boulden acted knowingly and recklessly. However, this Court declined to apply principles of wanton and reckless conduct in *Samson.* 560 A.2d at 1027. The plaintiff in *Samson* advanced a theory of liability which was based upon RESTATEMENT (SECOND) OF TORTS §§ 302, 302A, 302B and 315. *Id.* Those sections address unreasonable risk of harm caused by negligent or reckless conduct, or knowledge that conduct is likely to cause harm. This Court stated that "[t]he *Restatement* is merely a formulation of well established common law principles. *Wright* affirms the proposition that there is no common law liability against a tavern operator based on dram shop principles.... The *Restatement* cannot supply what the common law lacks." *Id.* at 1027–28.

Delaware has a legitimate interest in preventing the deaths, such as Michael Acker's, and the carnage which is caused on its roadways by drunk drivers. *Brank v. State*, Del.Supr., 528 A.2d 1185, 1190 (1987). This Court has repeatedly stated that, "[w]e do not suggest that Dram Shop liability, or a responsibility akin to it, is undesirable public policy or that adoption in Delaware would lend to illogical or unfair results. On the contrary, we think that a law which imposes some such responsibility on a licensee who wilfully or carelessly serves alcohol to an intoxicated patron has much to commend it." *Wright v. Moffitt*, 437 A.2d at 556; *Samson v. Smith*, 560 A.2d at 1027; *Oakes v. Megaw*, 565 A.2d at 916.

However, the public policy which precludes the judicial recognition of a cause of action in an area subject to specific statutory regulation, is the same today as it was when *Wright* was decided many years ago. It has not changed since *Samson* and *Oakes* were decided more recently. *See Oakes v. Megaw*, 565 A.2d at 916 (quoting *Samson v. Smith*, 560 A.2d at 1027). "[T]he General Assembly is in a far better position than this Court to gather the empirical data and to make the fact finding necessary to determine what the public policy should be as to a Dram Shop law, and the scope of any such law." *Wright v. Moffitt*, 437 A.2d at 556 (citations omitted).

We are not persuaded by the Ackers' attempt to distinguish the case *sub judice* from this Court's prior precedents, including *DiOssi.* Therefore, we adhere to the view that this Court has previously expressed, i.e., that the creation of any law imposing liability on a tavern owner, such as Santa Fe, is the prerogative of the General Assembly and not the judiciary. *Wright v. Moffitt*, 437 A.2d at 556; *DiOssi v. Maroney*, 548 A.2d at 1364; *Samson v. Smith*, 560 A.2d at 1027; *Oakes v. Megaw*, 565 A.2d at 916. Since the Delaware legislature has not imposed Dram Shop liability upon commercial vendors of alcohol, *a fortiori*, such liability cannot be imposed judicially upon an independent bus company, such as Boulden, transporting individuals who may or may not be intoxicated. Accordingly, the Ackers' second argument on appeal cannot prevail.

### Conclusion

We have carefully reviewed the record and the applicable law. The Ackers have failed to establish either a statutory or a common law basis for the allegations of liability against Santa Fe and Boulden. Therefore, the judgments of the Superior Court, which dismissed the Ackers' complaint against both Santa Fe and Boulden, are AFFIRMED.