Dwayne D. McCALL, Plaintiff
Below, Appellant,

v.

VILLA PIZZA, INC., a Delaware
corporation, Defendant
Below, Appellee.

Supreme Court of Delaware.

Submitted: Dec. 7, 1993.
Decided: Feb. 3, 1994.

William D. Fletcher, Jr. (argued), Schmittinger & Rodriguez, P.A., Dover, for appellant.

Francis J. Jones, Jr. (argued), and Eileen K. Andersen, Morris, James, Hitchens & Williams, Wilmington, for appellee.

Before VEASEY, C.J., HORSEY, MOORE, WALSH and HOLLAND, JJ., constituting the Court en banc.

WALSH, Justice:

In this appeal from the Superior Court's grant of summary judgment in favor of a tavern owner, we again face the issue of dram shop liability under Delaware law. However, we do so in the context of the plaintiff's reliance upon the duty imposed by the *Restatement (Second) of Torts* § 324 upon those who have taken charge of another who is helpless. The Superior Court held that subjecting the defendant to liability in the circumstances presented here would be inconsistent with settled Delaware law declining to impose liability on tavern owners for acts committed by intoxicated patrons off the premises. We agree and affirm.

I

In this appeal from the grant of summary judgment in favor of the defendant, we view the facts, as did the Superior Court, in the light most favorable to the non-moving party. *DiOssi v. Maroney*, Del.Supr., 548 A.2d 1361, 1362 (1988). So viewed, the facts as developed in discovery reflect the following events. On the evening of February 28, 1988, plaintiff-appellant Dwayne D. McCall ("McCall") was a patron of Villa Pizza, a combination bar and restaurant located in Dover and owned by defendant-appellee Villa Pizza, Inc., a Delaware corporation ("Villa Pizza"). During the course of the evening, McCall consumed a substantial amount of alcohol and became extremely intoxicated. Numerous witnesses described him as incoherent and very inebriated.

In the early morning hours of February 29, Arthur Gill ("Gill"), a Villa Pizza "bouncer," decided that McCall should be removed from the premises. This determination was made solely on the basis of Gill's observations; there were no customer complaints regarding McCall. Gill took McCall by the

arm and forcibly removed him from the premises, placing him outside the building. Villa Pizza's policy was to call a cab or otherwise arrange transportation for intoxicated patrons. That policy also included notification of the manager when patrons were ejected and requiring a Villa Pizza employee to stay with the patron until transportation was arranged. Gill, who was aware of McCall's intoxication, did not notify the manager. Although Gill testified that he thought he called a cab for Gill, the records of Dover's only cab company, City Cab, do not indicate that such a call was placed. Thus, the record indicates that Gill removed McCall from the building and left him alone outside, taking no further protective action in contravention of Villa Pizza's policy.

A witness observed McCall stagger to his car and leave the parking lot, in the course of which he hit a parked car. Approximately five miles from Villa Pizza, at 1:20 a.m., McCall was involved in a single vehicle accident when he failed to negotiate a turn. As a result, he was seriously and permanently injured. Hospital records indicate that McCall's blood alcohol level was 0.249 percent, two and one-half times the legal limit for operation of a motor vehicle under Delaware law. 21 *Del.C.* § 4177.

McCall filed a personal injury action, sounding in negligence, against Villa Pizza. In order to avoid the effect of our prior decisions regarding dram shop liability, he claimed that Villa Pizza undertook a duty to take reasonable care to secure his safety when its employee took control of him to remove him from the premises. He alleged a breach of that duty by leaving him alone outside when it was reasonably foreseeable that he would attempt to operate his motor vehicle in an intoxicated condition. *Restatement (Second) of Torts*, § 324 (1965). The Superior Court, relying principally on cases refusing to recognize dram shop liability in Delaware, granted Villa Pizza's motion for summary judgment, holding that McCall failed to state a cause of action for negligence.

## II

The appellate standard of review of a trial court's grant of summary judgment is well-

established. We review *de novo* the Superior Court's legal determination that, viewing the facts in the light most favorable to McCall, the non-moving party, Villa Pizza, the moving party, has demonstrated that there are no material issues of fact in dispute and that it is entitled to judgment as a matter of law. *Merrill v. Crothall–American, Inc.,* Del.Supr., 606 A.2d 96, 99–100 (1992); *Bershad v. Curtiss–Wright Corp.,* Del.Supr., 535 A.2d 840, 844 (1987).

■ This Court has consistently held that there is no statutory or common law cause of action by one injured off the tavern premises by an intoxicated patron, whether the injured person be the patron or a third-party. *Wright v. Moffitt,* Del.Supr., 437 A.2d 554 (1981); *Samson v. Smith,* Del.Supr., 560 A.2d 1024 (1989); *Oakes v. Megaw,* Del. Supr., 565 A.2d 914 (1989); *Acker v. S.W. Cantinas, Inc.,* Del.Supr., 586 A.2d 1178 (1991). The essential rationale underlying this line of cases is that the determination of whether to impose liability on tavern owners for injuries caused by intoxicated patrons involves significant public policy considerations and is best left to the General Assembly. *Wright,* 437 A.2d at 556; *Samson,* 560 A.2d at 1028; *Oakes,* 565 A.2d at 916; *Acker,* 586 A.2d at 1181. We recognize that denying recovery in such cases may result in the avoidance by tavern owners of full responsibility for their negligent acts in serving intoxicated persons. But as we noted in *Wright,* "[w]e do not suggest that Dram Shop liability, or a responsibility akin to it, is undesirable public policy or that adoption in Delaware would lend to illogical or unfair results. On the contrary, we think that a law which imposes some such responsibility on a licensee who willfully or carelessly serves alcohol to an intoxicated patron has much to commend to it." *Wright,* 437 A.2d at 556; *Samson,* 560 A.2d at 1027; *Oakes,* 565 A.2d at 916; *Acker,* 586 A.2d at 1181.

■ McCall does not expressly ask us to reconsider our repeated refusal to recognize dram shop liability and overrule *Wright, Samson, Oakes,* and *Acker.* Rather, he seeks the same result indirectly through ap-

plication of § 324 of the *Restatement (Second) of Torts* (1965), to commercial vendors of alcoholic beverages. That section provides:

*Duty of One Who Takes Charge of Another Who is Helpless*

One who, being under no duty to do so, takes charge of another who is helpless adequately to aid or protect himself is subject to liability to the other for any bodily harm caused to him by

(a) the failure of the actor to exercise reasonable care to secure the safety of the other while within the actor's charge, or

(b) the actor's discontinuing his aid or protection, if by so doing he leaves the other in a worse position that when the actor took charge of him.

McCall's thesis is that Villa Pizza, acting through its agent Gill, took physical control of him inside the bar when he was highly intoxicated and helpless, and thus assumed a duty not to leave him in a worse position. McCall claims that duty was breached when he was left alone outside the building when it was reasonably foreseeable that he would attempt to operate a motor vehicle with injurious consequences. This alleged duty and breach, McCall argues, supports a cause of action for negligence.

Restatement § 324 has not been adopted by application in Delaware. However, its companion section, § 323, dealing with the negligent performance of an undertaking to render services,[1] has been applied in the context of premises liability. *Jardel Co., Inc. v. Hughes*, Del.Supr., 523 A.2d 518 (1987); *Furek v. University of Delaware*, Del.Supr., 594 A.2d 506 (1991). In *Jardel*, we held that a shopping mall owner could be liable for injuries sustained by a tenant's employee who was abducted in the mall parking lot and raped at a nearby location. "Having undertaken to provide a security program, albeit voluntarily, Jardel [the mall owner] was obligated to perform the task in a reasonable

manner with a view toward the dangers to which the program was directed." 523 A.2d at 524. In *Furek*, this Court ruled that a university could be liable for injuries sustained by a student in a fraternity hazing incident occurring on university property where the university was aware of the dangers of hazing and repeatedly emphasized its policy of discipline for hazing infractions. "The University's policy against hazing, like its overall commitment to provide security on its campus, thus constituted an assumed duty which became 'an indispensable part of the bundle of services which colleges ... afford their students.'" 594 A.2d at 520, *quoting Mullins v. Pine Manor College*, Mass.Supr., 389 Mass. 47, 449 N.E.2d 331, 336 (1983).

McCall argues that the reasoning of *Jardel* and *Furek* warrants the adoption of § 324 here to sustain his cause of action. We find this argument unpersuasive. In *Jardel*, the plaintiff was abducted *on the premises* of the defendant. Similarly, in *Furek*, the plaintiff was injured *on the premises* of the defendant. Coupled with the assumed duties of the defendants, premises liability formed the essential predicate for imposing liability. *See also DiOssi v. Maroney*, Del.Supr., 548 A.2d 1361 (1988) (cause of action stated where injury was caused *on the premises* by a known dangerous condition *on the premises* of defendant). McCall was not injured on the premises of the defendant. He was injured *off the premises*, five miles away from Villa Pizza.

Moreover, the application of § 324 to the facts of this case is foreclosed by this Court's repeated refusal to impose dram shop liability. Positing tavern owner liability under § 324 implicates the same policy considerations we have repeatedly held are within the province of the legislature. *Wright*, 437 A.2d at 556; *Samson*, 560 A.2d at 1028; *Oakes*, 565 A.2d at 916; *Acker*, 586 A.2d at 1181.

---

1. *Restatement (Second) of Torts*, § 323 provides:
*Negligent Performance of Undertaking to Render Services*
One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is sub-

ject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
(a) his failure to exercise such care increases the risk of such harm, or
(b) the harm is suffered because of the other's reliance upon the undertaking.

The parties have cited numerous cases from other jurisdictions which they claim support their respective positions. Most persuasive is *DeBolt v. Kragen Auto Supply, Inc.,* 182 Cal.App.3d 269, 227 Cal.Rptr. 258 (1986), in which the court held that injured third parties could not recover from a company which ordered an intoxicated guest to leave a party it was hosting and that guest then caused a serious automobile accident. The court refused to allow the plaintiffs to circumvent California's statutory social host immunity by alleging a wrong, not in furnishing alcohol, but in forcing a person to leave the premises or failing to provide transportation. 227 Cal.Rptr. at 261. Similarly, we decline to permit McCall to avoid our dram shop liability holdings by alleging negligence, not in Villa Pizza's serving of alcohol, but in its forcible removal of him from the premises and without providing safe transportation.

Our holding that Restatement § 324 cannot serve as a substitute for dram shop liability is limited to the fact situation under review, *i.e.,* injury resulting from removal of an intoxicated person from a tavern. We need not decide whether other situations may warrant application of the principles of § 324 or its equivalent. *See Williams v. Saga Enterprises, Inc.,* 225 Cal.App.3d 142, 274 Cal. Rptr. 901 (1990) (bartender returned car keys he had been withholding by prior agreement to an intoxicated patron); *Galvin v. Jennings,* 3d Cir., 289 F.2d 15 (1961) (tavern owner gave specific driving instructions to obviously intoxicated patron). The facts presented here, however, fall clearly within our previous holdings that, unless and until the General Assembly imposes specific liability upon a tavern owner for injury arising from the serving of intoxicated persons, this Court is not free to recognize such a cause of action in tort.

The decision of the Superior Court is AFFIRMED.