# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

NOEMI VAZQUEZ AMBROSIO, )
)
Plaintiff, )
)
v. )
) C.A. No. N15C-06-100 CLS
WILLIAM DRUMMOND, )
DELAWARE DEPARTMENT OF )
SAFETY AND HOMELAND )
SECURITY, DELAWARE STATE )
POLICE TROOP 6, and WOODFIELD )
INVESTORS, L.P., jointly and )
severally, )
)
Defendants.

Date Submitted: April 19, 2017
Date Decided: April 21, 2017

On Defendant's, Woodfield Investors, L.P., Request for Dismissal
**GRANTED**.

## **ORDER**

Leroy A. Tice, Esquire, Wilmington, Delaware, Attorney for Plaintiff.

Michael I. Silverman, Esquire, Silverman, McDonald & Friedman, Wilmington, Delaware, Attorney for Defendant Woodfield Investors, L.P.

Lynn A. Kelly, Esquire, Delaware Department of Justice, Wilmington, Delaware, Attorney for Defendants William A. Drummond, Delaware Department of Safety and Homeland Security, and Delaware State Police Troop 6.

**SCOTT, J.**

## Background

The action pending before the Court is a personal injury action stemming from a pedestrian collision with a Delaware State Police patrol car. Plaintiff sued the police officer, Defendant William Drummond, individually, the Delaware Department of Safety and Homeland Security, and Delaware State Police Troop 6, jointly and severely. Plaintiff asked the Court for leave to amend her Complaint on April 29, 2016, and on May 31, 2016 the Court granted Plaintiff's motion to amend. Plaintiff then filed a Second Amended Complaint on June 6, 2016, which added Defendant Woodfield Investors, L.P. (hereinafter "Defendant Woodfield") as a Defendant, the owner of Limestone Terrace Apartments, Plaintiff's residence at the relevant time. Plaintiff's claim against Woodfield is based on premises liability. Plaintiff claims that Defendant Woodfield owed Plaintiff a duty because it knew or had reason to know that artificial lighting in its parking lot was insufficient to protect both drivers and pedestrians, and as a result of this knowledge Defendant had a duty to take reasonable measures to provide additional artificial lighting for the benefit of drivers and pedestrians using the provided parking lot. Plaintiff claims that Defendant breached its duty of care by failing to take reasonable steps to inspect its parking lot for adequate driver and pedestrian lighting to prevent both from being exposed to a dangerous condition. Additionally, Plaintiff alleges that Defendant Woodfield breached its duty of care

it owed to Plaintiff by failing to take reasonable steps to add additional artificial lighting in its parking lot adequate to prevent both drivers and pedestrians from being exposed to a dangerous condition. At the pre-trial conference on March 27, 2017, issues arose regarding whether Defendant Woodfield had a duty to keep the parking lot lit to protect pedestrians and drivers, and if so, whether expert testimony is required. The Court asked the parties to file supplemental memos on these issues. Plaintiff filed a memo on April 4, 2017, and Defendants filed their memo April 10, 2017. The Court held oral argument on these issues on April 19. 2017.

## Findings of Fact

Plaintiff, Noemi Vazquez Ambrosio, is an individual who lived as a tenant at Limestone Terrace Apartments, located at 4641 Patrician Boulevard, Wilmington, Delaware 19808. On November 1, 2014, Defendant Drummond was on "saturation duty" as a Delaware State Trooper. Around 11:00 p.m., on November 1 he followed a driver he suspected was driving under the influence. Defendant Drummond followed the vehicle north on Limestone Road (DE Route 7). Defendant Drummond observed the driver make a u-turn and head south on Limestone Road. Defendant Drummond followed the vehicle, made a u-turn onto southbound Limestone Road, and subsequently a right turn onto Patrician Boulevard to initiate a motor vehicle stop. Patrician Boulevard is a road that runs

through Limestone Terrace Apartment Complex that intersects southbound Limestone Road and Haverford Place. Parking spaces boarder both sides of Patrician Boulevard and the apartment complex buildings are located behind the parking spots to the right of the roadway as you enter Patrician Boulevard from southbound Limestone Road. Lights do not boarder Patrician Boulevard. Rather, the lights in question are attached to the individual buildings of the apartment complex. After a few seconds of driving on Patrician Boulevard, Defendant Drummond activated his emergency lights. Almost simultaneously Plaintiff appeared on the dashcam, crossing Patrician Boulevard, and Defendant Drummond's vehicle subsequently struck the Plaintiff. The light located on the apartment building adjacent to the point of impact on Patrician Boulevard was not lit.

### The Parties' Contentions Regarding the Request for Dismissal

The Court asked the parties to file supplemental briefing on two issues. First, whether Defendant Woodfield had a duty to provide adequate lighting in the parking lot of Limestone Terrace Apartments. Second, if this duty exists, whether expert testimony is required regarding the adequacy of the lighting. Plaintiff contends that Woodfield owed her a duty to provide a safe parking lot, as a tenant at Limestone Terrace Apartments. Plaintiff argues that this duty stems from the Delaware Landlord Tenant Code, stating that the "landlord shall at all times . . .

provide a rental unit which shall not endanger the health, welfare or safety of the tenants," and "[m]ake all repairs and arrangements necessary to put and keep the rental unit and the appurtenances thereto in as good condition as they were."[1] Plaintiff cites to *Ford v. Ja-Sin,* stating that landlords must "maintain the premises in a reasonably safe condition and to undertake any repairs necessary to achieve that end."[2]  Further, Plaintiff claims that because Defendant Woodfield admitted that it replaced certain lamp bulbs prior to this incident, custody and control of the parking lot are established, and it "illustrates the legal principle that when one undertakes a task an obligation attaches to perform the task in a reasonable manner."[3]  Additionally, Plaintiff asserts that expert testimony is not required concerning the adequacy of the lighting in the parking lot because "expert testimony is not admissible in a case in which the facts themselves can be adequately presented to the jury, and in which such facts are of a nature that ordinary men can understand them and draw the correct inferences from them."[4]

Contrary to Plaintiff's position, Defendant Woodfield argues that Plaintiff has the burden of proving the existence of a duty, and Plaintiff has not met her burden.  Defendant contends that Plaintiff was a business invitee on the property, and Defendant Woodfield owed her a duty to "remedy defects that they knew

---

[1] Plaintiff cites to 25 *Del. C.* § 5305(a)(2) and (a)(4).
[2] 420 A.2d 184, 186 (Del. Super. 1980).
[3] Plaintiff cites to *Jardel Co., Inc. v. Hughes,* 523 A.2d 518, 524 (Del. 1987).
[4] Plaintiff cites *Robelen Piano Co. v. Di Fonzo*, 169 A.2d 240, 246 (Del. 1961).

about or should have known about from a reasonable inspection."[5]  Woodfield argues that there was no defect on the property, and in the alternative, if a lighting defect did exist, this defect could not be considered the proximate cause of the accident because Plaintiff observed Defendant Drummond's patrol vehicle. Defendant disagrees with Plaintiff's analysis that a duty arises under Delaware's Landlord Tenant Code.  First, Defendant states Delaware case law does not support the proposition that a landlord, under the code, must supply a certain amount of artificial light.  Second, Defendant argues that the provision Plaintiff cites applies to rental units, and the parking lot in question is neither a rental unit nor a rentable area. Defendant also argues that an expert is necessary in tort cases where proximate cause is presented in a context which is not a matter of common knowledge.

## Discussion

The Court must assess Plaintiff's status on the premises in order to determine whether Defendant owed Plaintiff a duty of care.  Under Delaware law, a plaintiff must demonstrate that a particular defendant owed her a duty of care, breached that duty, and the breach was the proximate cause of her injuries.[6]  The Court determines whether a duty exists, and it "is entirely a question of law, to be determined by the body of statutes, rules, principles and precedents which make up

---

[5] Defendant cites *Short-Karr v. RB Gyms, Inc.*, 2015 WL 7776734 (Del. Super. Nov. 20, 2015).
[6] *Patton v. 24/7 Cable Co., LLC*, 2016 WL 6272552, *2 (Del. Super. Aug. 31, 2016).

the law."[7]  The type of duty a landlord owes to an individual depends on the individual's status on the land.  Defendant contends that Plaintiff was a business invitee, and under Delaware law Defendant Woodfield owed Plaintiff a duty to "exercise reasonable care to protect [her] from foreseeable dangers that [she] might encounter on the premises."[8]  A business invitee, under Delaware law, is "a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land."[9]  First, it appears to the Court that Patrician Boulevard is a road, and not a parking lot as the parties' papers stated.  Under 21 *Del. C.* § 101(60), a roadway is defined as "the portion of a highway improved, designed or ordinarily used for vehicular travel."[10]  A "private road or driveway" is defined as "every road or driveway not open to the use of the public for purposes of vehicular travel."[11]  The parties failed to brief this issue or provide the Court with appropriate status of Patrician Boulevard, as the parities stated that the incident occurred in a parking lot.  Patrician Boulevard is a road that makes a "U" through Limestone Terrace Apartments with intersections at southbound Limestone Road (Route 7) and Haverford Place.  Although parking spaces boarder the Patrician Boulevard, the Court finds that it is not a "parking

---

[7] *Id.* (citations omitted).
[8] *DiOssi v. Maroney*, 548 A.2d 1361, 1364 (Del. 1988).
[9] *Durham v. Leduc*, 2001 WL 1006232, at *2 (Del. Aug. 9, 2001)(citing *DiOssi,* 548 A.2d 1361 at 1366); *see also* Restatement (Second) of Torts § 332.
[10] *See* 21 *Del. C.* § 101(60).
[11] 21 *Del. C.* § 101(51).

lot." The primary purpose is not for parking vehicles; rather it is for ingress and egress of vehicles.

Subsequently, neither party confirmed the owner or controller of Patrician Boulevard. Rather, the parties submitted that Defendant Woodfield is the owner of Limestone Terrace Apartments, Plaintiff was a tenant of Limestone Terrace Apartments, and the lights in question were attached to the apartment buildings owned by Defendant Woodfield. Therefore, without a lease or other formalized document, the Court finds, for the purposes of this request for dismissal, that the relationship between Plaintiff and Defendant was that of a landlord and a tenant at the time of the incident. At oral argument the Court asked both parties what Plaintiff's status was on the property. Plaintiff's counsel stated that Plaintiff was a tenant of Limestone Terrace Apartments at the time of the accident, but he did not possess the lease agreement. Defendant Woodfield's counsel claimed that Plaintiff was a business invitee for the purposes of this litigation and he also did not possess the lease agreement. Based on the facts provided to the Court, Defendant's duty to Plaintiff is established through their landlord tenant relationship. Contrary to Defendant Woodfield's argument, Plaintiff is not a business invitee because her presence on the land was not directly or indirectly connected with the business dealings of Defendant. Thus, the Court will assess duty based on a landlord tenant relationship.

A landlord's duties to their tenants arise from the Delaware Landlord Tenant Code, the lease between the two parties, and common law. Defendant correctly pointed out that the landlord tenant code and Delaware case law does not require that a landlord maintain a well lit roadway or parking lot to protect tenants and drivers from other vehicles. Pursuant to 25 *Del. C.* § 5305, a landlord must "make all repairs and arrangements necessary to put and keep the rental unit and the appurtenances thereto in as good condition as they were" and "provide a rental unit which shall not endanger the health, welfare or safety of the tenants or occupants."[12] As Defendant argues, a rental unit is defined as "any house, building, structure, or portion thereof, which is occupied, rented or leased as the home or residence of 1 or more persons."[13] Under Delaware law, a landlord may be liable for harm in the "common areas over which the landlord retained control" unless the tenant is responsible for maintenance and repair.[14] In Delaware, a landlord owes a duty of ordinary care, and he must exercise reasonable care to keep common areas in a safe condition for the use of his tenants.[15] Even if a court were to determine that a landlord owed a duty of reasonable care as to the common areas, "no duty can be imposed on the landlord unless there is 'actual control' of

---

[12] *See* 25 *Del. C.* § 5305.
[13] 25 *Del. C.* § 5141(25).
[14] *Ford v. Ja-Sin*, 420 A.2d 184, 188 (Del. Super. 1980).
[15] *Young v. Saroukos*, 185 A.2d 274, 282 (Del. Super. 1962).

the leased premises."[16]  This Court has held that "[a]ctual control, in this context, refers to 'actual management of the leased premises'."[17]  Here, Plaintiff failed to demonstrate that the Defendant owed Plaintiff a duty to light the roadway.  First, the Court cannot interpret that this duty stems from the landlord tenant code because Patrician Boulevard is not a rental unit.  Further, as demonstrated by the video, the lights were attached to the individual apartment buildings and not the road where Plaintiff was injured.   Neither party provided a lease, or information on who maintains the roadway.  Thus it is difficult for the Court to assess who has the burden, if any, to maintain lighting on Patrician Boulevard.  Along these same lines, assuming under common law Defendant Woodfield owed Plaintiff a duty, the Court does not have any information on whether or not Defendant Woodfield was in actual control of the premises where Plaintiff was injured.   The only evidence offered by Plaintiff regarding Defendant's control of Patrician Boulevard was that Defendant changed the light bulb in the lights- which are attached to the building and not the road. Therefore, the Court finds that Plaintiff failed to demonstrate that Defendant Woodfield owed Plaintiff a duty to maintain lighting along Patrician Boulevard, and that Defendant Woodfield actually controlled Patrician Boulevard.

---

[16] *Hynson v. Whittle*, 2013 WL 6913285, at *4 (Del. Super. Dec. 24, 2013)(citations omitted).
[17] *Id.*

Even if Defendant Woodfield owed Plaintiff a duty of care to light Patrician Boulevard, the Court finds that expert testimony regarding the adequacy of the lighting is required in this case. First, absent a clear legal duty to maintain adequate light along Patrician Boulevard, an expert would be needed to determine the Code requirements and violations, as a lay witness cannot testify to this. Second, an expert is necessary in order to determine a landlord's standard of care on this issue. In order "to prove ordinary negligence, Plaintiffs must prove that the landlord failed to maintain the premises in a reasonably safe condition."[18] Along the same lines, this Court has noted that the "common law standard of care for landlords is formulated by the extent to which the reasonable landlord exceeds federal, state and local codes. This is very similar to the standard of care for a local industry or trade practice for professionals."[19] Without expert testimony as to the standard of care to aid the fact finder, in this case the jury, it is impossible to determine if Defendant breached their duty as a landlord. In *Bond v. Wilson*, this Court held that an expert was necessary "to establish the defective condition of [a] railing" at the time the Plaintiff was allegedly injured.[20] The Court stated that "expert testimony would also be required to establish the standard for reasonable

---

[18] *Norfleet v. Mid-Atlantic Realty Co., Inc.*, 2001 WL 695547 at *4 (Del. Super. Apr. 20, 2001).
[19] *Id.* at *6.
[20] *Bond v. Wilson*, 2015 WL 1242828, at *1 (Del. Super. Mar. 16, 2015).

inspection by a landlord."[21]  In *Koutoufaris*, a case that dealt with inadequate lighting and security of a parking lot, at the trial level "a light expert testified on plaintiff's behalf that lighting in the area where the assault occurred was far below minimum industry standards."[22]  Considering the case law on this issue, and the facts in the present case, expert testimony is required to establish the standard of care of a reasonable landlord.  Contrary to Plaintiff's position that the parking lot was "pitch black," it is undisputed that Defendant Drummond's headlights were on at the time of the accident, and Plaintiff testified that she saw the officer's vehicle. Further, the dashcam footage demonstrated that surrounding apartment building lights were working.  Thus, an expert is also needed to testify in regard to the proximate cause of the accident: i.e. but for the lack of light from the building Defendant would have seen Plaintiff cross Patrician Boulevard.

For the foregoing reasons, Defendant Woodfield's Request for Dismissal is **GRANTED**.

**IT IS SO ORDERED.**

**/s/ Calvin L. Scott**
**Judge Calvin L. Scott, Jr.**

---

[21] *Id.*

[22] *Koutoufaris v. Dick*, 604 A.2d 390, 394 (Del. 1992).