## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

BRYAN CONNOLLY and SUSAN CONNOLLY, Individually and as Co-Administrators of the Estate of ETHAN P. CONNOLLY,

    Plaintifffs,

v.

THETA CHI FRATERNITY, INC. and ALPHA XI CHAPTER OF THE UNIVERSITY OF DELAWARE, Individually and as a chapter and agent of the Theta Chi Fraternity, ALPHA EPSILON PHI Sorority, Individually and t/a PHI CHI CHAPTER, UNIVERSITY OF DELAWARE, Individually and as agent of ALPHA EPSILON PHI Sorority, EXECUTIVE BANQUET & CONFERENCE CENTER, CAPOZZOLI CATERING OF DELAWARE, INC., a Delaware Corporation, PLUMBERS & PIPEFITTERS LOCAL NO. 74, ET. AL. and THE PLUMBERS & PIPEFITTERS SOCIAL CLUB,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. N14C-08-006 FWW

Submitted:  November 28 and 29, 2017
Decided:  February 28, 2018

## MEMORANDUM OPINION AND ORDER

Upon Defendant Alpha Epsilon Phi Sorority, Individually and t/a Phi Chi Chapter's Motion for Summary Judgment Based upon Lack of Duty:
**GRANTED.**
Upon Defendant Alpha Epsilon Phi Sorority, Individually and t/a Phi Chi Chapter's Motion for Summary Judgment Based upon Ethan Connolly's Reckless Conduct and Comparative Negligence:
**MOOT.**
Upon Defendant University of Delaware's Motion for Summary Judgment:
**GRANTED.**
Upon Defendant Capozzoli Catering of Delaware, Inc.'s Motion for Summary Judgment:
**GRANTED.**
Upon Defendant Plumbers and Pipefitters Local No. 74's and Defendant The Plumbers and Pipefitters Social Club's Motion for Summary Judgment;
**GRANTED.**

Beverly L. Bove, Esquire, Vincent J. X. Hedrick, Esquire, Beverly L. Bove, Attorney at Law, 1020 W. 18th Street, P.O. Box 1607, Wilmington, Delaware 19899; Attorneys for Plaintiffs Bryan Connolly and Susan Connolly, Individually and as Co-Administrators of the Estate of Ethen P. Connolly.

Kevin J. Connors, Esquire, Marshall Dennehey Warner Coleman & Goggin, Nemours Building, 1007 N. Orange Street, Suite 600, P.O. Box 8888, Wilmington, Delaware 19899; Attorney for Defendant Alpha Epsilon Phi Sorority, Individually and t/a Phi Chi Chapter.

William E. Manning, Esquire, James D. Taylor, Esquire, Danielle N. Petaja, Esquire, Saul Ewing Arnstein & Lehr LLP, 1201 N. Market Street, Suite 2300, Wilmington, Delaware 19801; Attorneys for Defendant University of Delaware.

Colin M. Shalk, Esquire, Brian V. Demott, Esquire, Casarino Christman Shalk Ransom & Doss, P.A., 1007 N. Orange Street, Suite 1100, Wilmington, Delaware 19801; Attorneys for Defendant Capozzzoli Catering of Delaware, Inc.

Nancy Chrissinger Cobb, Esquire, Chrissinger & Baumberger, Three Mill Road, Suite 301, Wilmington, Delaware 19806; Attorney for Defendant Plumbers & Pipefitters Local No. 74 and Defendant The Plumbers and Pipefitters Social Club.

**WHARTON, J.**

2

# I.    INTRODUCTION

It falls to the Court to perform the unhappy task of bringing more bad news to people who have had far too much of that in recent years. On October 18, 2013, University of Delaware student Ethan P. Connolly ("Ethan"), the 19-year-old son of Bryan and Susan Connolly ("Connollys") was killed when he walked in front of a pickup truck. It was 12:31 a.m. It was dark. Ethan was crossing northbound Delaware Route 896 south of Newark. He was not crossing at the crosswalk with lighted pedestrian crossing signals approximately 90 feet from where he was struck. He was not wearing any reflective clothing, nor was he carrying a flashlight. Most significantly, Ethan was grossly impaired due to acute alcohol intoxication. At autopsy, he had blood alcohol concentrations of 0.232 g/dl (femoral blood), 0.227 g/dl (vitreous humor) and 0.304 g/dl (urine). He tested positive for marijuana.

Ethan had been invited to an off-campus sorority "crush" party held at a banquet facility not far from where he died. The facility was operated by a catering company and owned by a labor union. Members of the union's social club served as bartenders. Bus transportation was provided by the sorority to and from the event. Ethan was killed prior to the busses departing from the event. Ethen had been drinking before the event.

Ethan's parents have brought this wrongful death suit against the University of Delaware ("University"), the sorority and its local chapter, Alpha Epsilon Phi

("Sorority"), the caterer, Capazzoli Catering of Delaware, Inc. ("Capozzoli"), and the union and its social club, Plumbers & Pipefitters Local No. 74 ("Local 74") and The Plumbers & Pipefitters Social Club ("Social Club").[1] The Connollys allege that each defendant owed a duty to Ethan, breached that duty, and the breach of the duty was the proximate cause of Ethan's death. All defendants have moved for summary judgment. Themes common to each motion are that the movant did not owe a duty to Ethan, did not breach any duty it allegedly owed him, and Ethan's conduct was the proximate cause of his death, not anything the movant did or did not do. After carefully considering all of the parties' submissions and arguments, the Court finds that on the night of his death, none of the defendants owed Ethan the duty the Connollys allege each owed to him. None of the defendants breached any claimed duty to Ethan and no action or inaction on the part of any defendant was a proximate cause of Ethen's death. The sad and inescapable truth is that Ethan, and only Ethan, was responsible for his own death. Accordingly, applying Superior Court Civil Rule 56, all of the motions for summary judgment are **GRANTED** with the exception of the Sorority's motion based on Ethan's reckless conduct and comparative negligence, which is **MOOT.**

---

[1] All other defendants have been dismissed.

4

## II.    FACTUAL AND PROCEDURAL CONTEXT

The University of Delaware prohibits most possession, use, or consumption of alcohol on-campus.[2]  Student organizations may serve alcohol at on-campus functions or events but are required to obtain the explicit, prior approval of the Director of the University Student Centers.[3]  As a result, many students and student organizations host events off-campus in order to consume alcohol.  In light this practice, the University warned:

> The University accepts no responsibility for the possession, use, consumption, manufacture, sale, or distribution of alcoholic beverages by students off-campus, including at events or functions sponsored in whole or in part by one or more student organizations or individuals.  A student hosting or attending an off-campus function should be aware of the applicable laws regarding alcohol and should be aware that the University may also pursue student conduct charges for such behavior.[4]

In the fall of 2013, Ethan Connolly was a 19-year-old sophomore at the University of Delaware.[5]  On the evening of October 17, 2013, the Sorority hosted an off-campus "crush" party[6] at the Executive Banquet & Conference Center

---

[2] Def. University of Delaware Op. Br. Mot. Summ. J., D.I. 267, Ex. 20 at 11-12.
[3] *Id.* at 11.
[4] *Id.* at 12-13.
[5] Def. Plumbers & Pipefitters Local No. 74 Op. Br. Mot. Summ. J., D.I. 259 at 4.
[6] The "crush" party was a social function held by the Sorority where members were permitted to invite either one or two guests as a date to the invitation only event.

("Banquet Center") south of Newark, Delaware.[7] Ethan was invited to attend the crush party by Sorority member Stephanie Auerbach ("Stephanie").[8]

The Banquet Center is owned by Local 74.[9] At the time of the crush party, Capozzoli was a tenant of Local 74 and operated a catering business out of the Banquet Center.[10] Local 74 maintained the sole liquor license for the Banquet Center.[11] The Social Club, an affiliate of - but a separate legal entity from - Local 74, was solely responsible for distributing any and all alcohol from the bar of the Banquet Center.[12]

Ethan and Stephanie made plans to meet prior to the crush party to "pre-game."[13] Stephanie advised Ethan that she had tequila and eight beers for him.[14] Texts from Ethan confirm his attendance and consumption of alcohol at the pre-game.[15] The crush party began at approximately 10:30 p.m. and ended at approximately 12:30 a.m.[16] Ethan and Stephanie used a bus provided by the Sorority

---

[7] Def. Plumbers & Pipefitters Local No. 74 Op. Br. Mot. Summ. J., D.I. 259 at 4.
[8] *Id.*
[9] Def. Capozzoli Catering of Delaware, Inc. Op. Br. Mot. Summ. J., D.I. 257 at 6.
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] Def. University of Delaware Op. Br. Mot. Summ. J., D.I. 267, at 8. "Pre-gaming" is the name given to drinking before an event at which more drinking will occur.
[14] *Id.*
[15] *Id.*
[16] Def. Plumbers & Pipefitters Local No. 74 Op. Br. Mot. Summ. J., D.I. 259 at 4.

to get from campus to the Banquet Center.[17] Once the partygoers boarded the buses on campus, and before they exited, the Sorority checked the partygoers for alcohol or drinking containers.[18]

Upon exiting the buses, partygoers were frisked by Social Club employees and females were bag checked by a Capozzoli employee.[19] After being checked, the partygoers formed two lines to enter the Banquet Center - one for those 21 and older and one for those under 21.[20] Attendees 21 and older showed identification to Capozzoli employees to procure a wristband, thereby verifying they were of legal drinking age, while those under 21 were allowed to enter without showing identification.[21] Inside the Banquet Center, two Social Club employees monitored the venue, the bathrooms, and the foyer leading into the venue, while three licensed Social Club employees staffed a cash bar.[22] The bartenders were instructed to card anyone who looked under age and to refuse service to anyone who appeared inebriated, additionally the bartenders were instructed never to serve more than one drink per patron at a time.[23]

---

[17] Pltfs.' Ans. Br. Mot. Summ. J., D.I. 318 at 3.
[18] Def. Plumbers & Pipefitters Local No. 74 Op. Br. Mot. Summ. J., D.I. 259 at 4-5.
[19] *Id.* at 5.
[20] *Id.* at 6.
[21] *Id.*
[22] Def. Capozzoli Catering of Delaware, Inc. Op. Br. Mot. Summ. J., D.I. 257 at 5.
[23] Def. Plumbers & Pipefitters Local No. 74 Op. Br. Mot. Summ. J., D.I. 259 at 6.

Once Ethan arrived his activities and movements at the Banquet Center are unclear. No one has testified seeing Ethan attend the crush party, drinking any alcohol at the crush party, or knowing why he left the crush party and was walking in the roadway.[24]

At approximately 12:31 a.m., Linwood McLean was driving northbound on Route 896.[25] At that moment, Ethan and two other males - Daniel Bernstein and David Muir - were crossing the highway (away from the Banquet Center.)[26] None of the men was wearing any reflective material or carrying any type of flashlight or other lighting device, and as they crossed in front of McLean's vehicle, the left side of the vehicle collided with Ethan and Bernstein.[27] As the buses left the party to return to campus, attendees riding the buses saw Ethan lying on the ground after he was hit.[28] Ethan was pronounced dead at 12:53 a.m. on October 18, 2013.[29]

The police report indicates that the roadway was dark but there was a lighted pedestrian crosswalk approximately 90 feet from the collision scene.[30] Additionally, at autopsy Ethan's blood alcohol concentrations were 0.232 g/dl (femoral blood),

---

[24] Def. University of Delaware Op. Br. Mot. Summ. J., D.I. 267 at 8-9.
[25] *Id.* at 9.
[26] *Id.*
[27] *Id.* at 10.
[28] Pltfs.' Ans. Br. Mot. Summ. J., D.I. 316 at 7.
[29] Def. University of Delaware Op. Br. Mot. Summ. J., D.I. 267 at 10.
[30] *Id.*

0.227 g/dl (vitreous humor), and 0.304 g/dl (urine).[31]  His urine tested positive for the presence of cannabinoids.[32]  He was not wearing a wristband.[33]

On November 29, 2016, the Connollys filed their Third Amended Complaint ("TAC") against Defendants for the wrongful death of Ethan Connolly.[34]  All Defendants filed Motions for Summary Judgment.  The Connollys responded opposing each Defendant's Motion for Summary Judgment.  The parties appeared before the Court for oral argument on November 28 and 29, 2017.

## III.  STANDARD OF REVIEW

Superior Court Civil Rule 56(c) provides that summary judgment is appropriate when "there is no genuine issue of material fact…and the moving party is entitled to judgment as a matter of law.[35]  The moving party initially bears the burden of establishing both of these elements; if there is such a showing, the burden shifts to the non-moving party to show that there are material issues of fact for resolution by the ultimate fact-finder.[36]  The Court considers the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" in determining whether to grant summary judgment.[37]  Summary

---

[31] *Id.* at 11
[32] *Id.*
[33] Def. Capozzoli Catering of Delaware, Inc. Op. Br. Mot. Summ. J., D.I. 257, at 6.
[34] D.I. 198.
[35] Del. Super. Ct. Civ. R. 56(c).
[36] *See, Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979) (citations omitted).
[37] Del. Super. Ct. Civ. R. 56(c).

judgment will be appropriate only when, upon viewing all of the evidence in the light most favorable to the non-moving party, the Court finds that there is no genuine issue of material fact.[38] When material facts are in dispute, or "it seems desirable to inquire more thoroughly into the facts to clarify the application of the law to the circumstances," summary judgment will not be appropriate."[39] However, when the facts permit a reasonable person to draw but one inference, the question becomes one for decision as a matter of law.[40]

## IV. THE PARTIES' CONTENTIONS

### A. The Sorority.

The wrongful death claim against the Sorority alleges that both the national sorority and its local chapter owed a duty to Ethan to manage and oversee the local chapter's operations and the activities of its members as well as the provision and use of alcohol in connection with the crush party in a "reasonably prudent manner and/or assumed such a duty."[41] Count III of the TAC alleges that the Sorority negligently breached its duty to Ethan in that it: 1) relied on underage members who had themselves taken part in activities involving alcohol and who had taken "oaths

---

[38] *Singletarry v. Amer. Dept. Ins. Co.* 2011 WL 607017 at *2 (Del. Super.) (citing *Gill v. Nationwide Mut. Inc. Co.*, 1994 WL 150902 at *2 (Del. Super.)).
[39] *Ebersole v. Lowengrub*, 180 A.2d 467, 468-69, (Del. 1962) (citing *Knapp v. Kinsey*, 249 F.2d 797 (6th Cir. 1957)).
[40] *Wooten v. Kiger*, 226 A.2d 238, 239 (Del. 1967).
[41] TAC, D.I. 198 at Counts III, IV.

of secrecy and loyalty to the brotherhood [sic], to manage the local sorority and its activities and to manage its risk management policies;" 2) failed to provide effective supervision and control over the local sorority's officers and members and pledge activities of the local sorority; 3) failed to implement reasonable measures to enforce risk management policies prohibiting the use of alcohol during all activities; 4) failed to provide reasonable safeguards and restrictions to prevent underage drinking and excessive drinking and supervision of underage persons serving alcohol to others; 5) failed to implement reasonable measures to prohibit the excessive consumption of alcohol at the crush party; 6) failed to implement reasonable measures to enforce state law and University and Sorority policies against underage drinking and hazing; 7) failed to implement reasonable measures to stop underage drinking and hazing which it knew or should have known were occurring at the local sorority; 8) failed to discipline local sorority members for engaging in underage drinking and alcohol related initiation activities; 9) failed to train local sorority members on risk management and various other policies and procedures; 10) delegated the non-delegable duty of safety to others; 11) failed to assure that Ethan returned to campus on the bus on which the Sorority transported him to the crush party; 12) failed in its duty under *DiOssi v. Maroney*[42] to anticipate that Ethan might consume beverages and thereafter be exposed to hazards; 13) pursuant to *Furek v. University of*

---

[42] 584 A.2d 1361 (Del. 1988).

11

*Delaware,*[43] failed in its duty to Ethan to exercise reasonable care in transporting him to the Banquet Center by completing the task of returning him to campus; and 14) was otherwise negligent.[44]

In Count IV the TAC alleges that the Sorority was wanton, willful, and/or reckless in that the Sorority: 1) knew or should have known of the "unparalleled dangers associated with the 'big brother' [sic] and family drink ritual, of hazing, alcohol abuse, and inept risk and crisis management within fraternal [sic] organizations;"[45] 2) upon information and belief, had available to it information about the risks of alcohol at sorority events; 3) upon information and belief, knew that its risk and crisis management policies were not working; 4) upon information and belief, knew of and failed to supervise or implement reasonable controls over the traditions of the local sorority, including excess alcohol consumption, hazing, and other activities that resulted in Ethan's death; and 5) breached its duty to Ethan by its acts and omissions in instituting and enforcing wholly inadequate and dangerous policies and procedures for managing the local sorority.[46]

The Sorority advances two arguments in its Opening Brief in support of its Motion for Summary Judgment Based on Lack of Duty. First, it argues that the

---

[43] 594 A.2d 506 (Del. 1991).
[44] TAC, D.I. 198 at Count III.
[45] *Id.* at Count IV.
[46] *Id.*

12

Sorority is entitled to summary judgment as a matter of law because the Connollys are unable to make out a *prima facie* case against it because they have no qualified and reliable opinion of an expert establishing a standard of care.[47] Second, it argues that it is entitled to summary judgment because it owed no duty to Ethan.[48]

In its Answering Brief in Opposition to the Sorority's Motion for Summary Judgment, the Connollys argue that their two experts, Russell Kolins and Norman J. Pollard, Ed.D., are qualified experts who have articulated the appropriate standard of care for the Sorority.[49] They further argue that where there is a logical basis for the testimony, the credibility and weight of the testimony of expert witnesses is to be determined by the jury.[50] The Connollys assert that the Sorority owed a duty to Ethan, notwithstanding the absence of Dram Shop liability, based on business premises liability and common law tort liability, including under Sections 284, 302, 323 and 324 of the Restatement (Second) of Torts.[51]

In reply, the Sorority argues that the Connollys fail to address the merits of its contentions regarding the opinions of Mr. Kolins and Dr. Pollard and only address their expert witnesses' qualifications.[52] Further, the Sorority argues it cannot

---

[47] Def. Alpha Epsilon Phi Sorority Op. Br. Mot. Summ. J., D.I. 271 at 11.
[48] *Id.* at 13.
[49] Pltfs.' Ans. Br. Mot. Summ. J., D.I. 318 at 11-14.
[50] *Id.*
[51] *Id.* at 15-34.
[52] Def. Alpha Epsilon Phi Reply Br. Mot. Summ. J., D.I. 338 at 1-2.

have any premises liability since nothing, including Ethan's fatality, occurred on any property of the Sorority.[53] Finally, to the extent it voluntarily undertook any duty under the Restatement (Second) of Torts to Ethan to provide transportation to and from the party, the Sorority never breached that duty because Ethan, voluntarily and without notice, left the party prior to its conclusion and before the departure of the return transportation.[54]

## B.     The University.

Count V of the TAC alleges that the University negligently caused Ethan's death.[55] In that count, the Connollys allege that the University owed the same duty to Ethan that the Sorority did and negligently breached that duty in virtually all of the same ways that they allege that the Sorority breached its duty to Ethan.[56] They do not allege business premises liability against the University, however. Additionally, they allege that the University failed to implement reasonable safety procedures for off campus events.[57] Count VI alleges wanton, willful, and/or reckless misconduct on the part of the University.[58] The language of Count VI tracks the language of Count IV which alleges wanton, willful and reckless misconduct on

---

[53] *Id.* at 4.
[54] *Id.* at 5-8.
[55] TAC, D.I. 198 at Count V.
[56] *Id.*
[57] *Id.*
[58] *Id.* at Count VI.

14

the part of the Sorority.[59] In addition, Count VI alleges that the University, by acts and omissions in encouraging off campus events, created an unreasonable risk of injury or death to Ethan.[60]

In its Motion for Summary Judgment, the University asserts that it had no duty to Ethen since the doctrine of *in loco parentis* no longer applies in Delaware, and *Furek* does not suggest any duty to Ethan.[61] Moreover, the Connollys cannot; 1) identify a standard of care accepted throughout the higher education community; 2) identify an act or omission by the University that breached the applicable standard of care and was the proximate cause of Ethen's death; or 3) explain why Ethan was not solely responsible for his own death.[62]

In their Answering Brief in Opposition the University's Motion for Summary Judgment, the Connollys advance the same arguments they made regarding Mr. Kolins and Dr. Pollard's testimony as to standard of care that they made in opposing the Sorority's motion.[63] The Connollys further assert that the University owed a duty to Ethan based on common law principles.[64] They also adopt and incorporate their arguments in opposition to the motions for summary judgment of Capozzoli

---

[59] *Id.*
[60] *Id.*
[61] Def. University of Delaware Op. Br. Mot. Summ. J., D.I. 267 at 19.
[62] *Id.* at 2.
[63] Pltfs.' Ans. Br. Mot. Summ. J., D.I. 321at 19-22.
[64] *Id.* at 23-30.

15

and Local 74.[65]  Finally, they argue that the question of Ethan's comparative negligence is one for the jury.[66]

The University makes five points in reply.  First, it points out that one of the cases the Connollys rely upon to establish a duty to Ethan on the part of the University, *Marshall v. University of Delaware*,[67] was decided prior to the Supreme Court's decision in *Furek,* and a different result obtained for the University's second motion for summary judgment decided after *Furek.*[68]  *Furek* and subsequent cases make it clear that the University is not responsible for injuries occurring at off-campus student social events.[69]  Second, the University disputes the notion that the issues raised in its motion are fact issues for the jury instead of legal issues for the Court, arguing that the determination of whether a duty exists is a legal question.[70]  Third, the University argues that Dr. Pollard fails to identify a source of the duty he claims the University owed to Ethen.[71]  Fourth, the alleged breach of the purported

---

[65] *Id.* at 28.

[66] *Id.* at 30-35.

[67] 1986 WL 11566 (Del. Super.) (cited by the Connollys in their Answering Brief, D.I. 321 at 26-27, Ex. CC, as 1986 Del. Super. Lexis 1374 (Del. Super. Oct. 8, 1986)).

[68] Def. University of Delaware Reply Br. Mot. Summ. J., D.I. 338 at 5-6; *See, Marshall v. University of Delaware,* 633 A.2d 370 (Table) (Del. 1993); 1993 WL 385114 (Del.).

[69] *Id.* at 6.

[70] *Id.* at 7.

[71] *Id.* at 8-10.

16

duty owed by the University to Ethan was not the proximate cause of his death, and, fifth, Ethan's own choices were the proximate cause of his death.[72]

### C. Capazzoli.

The Connollys allege in the TAC that Capozzoli's "negligent, reckless, willful and wanton, and intentional conduct" was a proximate cause of Ethan's death.[73] Specifically, they allege that Capozzoli: 1) failed to properly maintain, secure, and monitor the Banquet Center; 2) failed to monitor, secure, or otherwise protect its underage patrons from consuming alcohol at the Banquet Center; 3) failed to adequately inspect, monitor, and supervise the Banquet Center to ensure that underage patrons were not being served alcohol; 4) failed to stop consumption of alcohol by underage patrons who were being served alcohol at the Banquet Center; 5) failed to train and supervise its employees to ensure that underage patrons were not being served alcohol; 6) hired incompetent, negligent, and reckless employees to monitor, ensure, and inspect the Banquet Center to prevent underage patrons from being served alcohol; 7) delegated its non-delegable duty of safety to others; 8) failed to prevent Ethan from leaving the Banquet Center on foot, thereby creating an unreasonable risk of his injury and death; 9) failed in its duty under *DiOssi* to anticipate that Ethan might consume alcohol and thereafter be exposed to hazards;

---

[72] *Id.* at 10-12.
[73] TAC, D.I. 198 at Count VII.

17

10) pursuant to *Furek,* failed in its duty to Ethan to exercise reasonable care in transporting him to the Banquet Center by completing the task of returning him to campus; and 11) was otherwise negligent.[74]

Capozzoli advances two primary arguments in support of its Motion for Summary Judgment, both based on its position that it owed no duty to Ethan. First, it argues that one of the Connollys' expert witnesses impermissibly offered a legal opinion it had a legal duty to Ethen, when in fact, it did not.[75] Second, it argues that the Connollys' attempt to impose a non-delegable duty on it amounts to an attempt to circumvent the Delaware Supreme Court's long history of decisions rejecting Dram Shop and Social Host liability.[76] Capozzoli's Opening Brief contains an extended exegesis of the Delaware Supreme Court's case law on Dram Shop and Social Host liability in support of its argument that Delaware courts are clear that no viable cause of action exists against a commercial dispenser of alcohol or a social host for an injury suffered or inflicted by an intoxicated person.[77] Capozzoli also joins in the Motions for Summary Judgment of all Co-Defendants.[78] Specifically it

---

[74] *Id.*
[75] Def. Capozzoli Catering of Delaware, Inc. Op. Br. Mot. Summ. J., D.I. 257 at 10.
[76] *Id.* at 11-27.
[77] *Id.* at 26.
[78] D.I. 281.

18

joins the University's motion in its entirety, Section 2 of the Sorority's motion based on lack of duty[79] and Sections 1,2, and 3 of Local 74's motion.[80]

Although they acknowledge that Capozzoli is not liable for Ethan's death under a theory of Dram Shop liability, the Connollys maintain that Capozzoli is liable for Ethan's death based on business premises liability, social host liability and common law restatement of torts liability adopted in Delaware.[81] Further, they incorporate the positions they have taken in opposition to the motions for summary judgment of the Sorority, the University, and Local 74.[82]

Capozzoli rejects the Connollys' argument that it is liable for Ethan's death under either § 324 or § 323 of the Restatement (Second) of Torts as such an argument constitutes an impermissible end run around the Delaware Supreme Court's refusal to impose Dram Shop and Social Host liability.[83] Further, Capozzoli insists that it

---

[79] Section 2 of the Sorority's motion argues that summary judgment is appropriate because the Connollys are unable to make out a *prima facie* case as to the applicable standard of care in the absence of a qualified and reliable expert opinion. *See* D.I. 271 at 11-13.

[80] Those sections argue that there is no Dram Shop liability in Delaware (Section 1), a premises liability claim fails as a matter of law (Section 2), and the claims of the estate also fail as a matter of law (Section 3). *See* Plumbers & Pipefitters Local No. 74 Mot. Summ. J., D.I. 259.

[81] Pltfs.' Ans. Br. Mot. Summ. J., D.I. 314 at 1.

[82] *Id.* at 24.

[83] Def. Capozzoli Catering of Delaware, Inc. Reply Br. Mot. Summ. J., D.I. 327 at 3-8.

19

cannot be liable under a premises liability theory because there was no property nexus to Ethan's injury.[84]

### D. Local 74 and the Social Club.

The wrongful death claim against Local 74 and the Social Club is found at Count VIII if the TAC.[85] It is identical to the claim against Capozzoli.[86]

Like Capozzoli, Local 74 argues in its Motion for Summary Judgment that the absence of Dram Shop liability in Delaware precludes liability as to it.[87] It also maintains that it has no premises liability as a landholder because Ethan was not killed at the Banquet Center.[88] Finally, it argues that the estate's claims fail as a matter of law because Ethan was killed instantly.[89]

The Connollys again acknowledge the absence of Dram Shop liability in Delaware, but maintain nonetheless that Local 74 is liable for Ethan's death on premises liability and common law tort theories.[90] They also incorporate their arguments in opposition to the motions for summary judgment of the Sorority, the University and Capozzoli.[91] Lastly, they point out that no survivorship claim was

---

[84] *Id.* at 9-11.
[85] TAC, D.I. 198 at Count VIII.
[86] *Id.* at Count VII.
[87] Def. Plumbers & Pipefitters Local No. 74 Op. Br. Mot. Summ. J., D.I. 259 at 13.
[88] *Id.* at 19.
[89] *Id.* at 27.
[90] Pltfs.' Ans. Br., D.I. 287 at 9-15.
[91] *Id.* at 15.

20

plead on behalf of Ethan's estate, so there is no predicate upon which to grant summary judgment as to the non-existent survivorship claim, a point later acknowledged at argument by Local 74 and the Social Club.[92]

Like Capozzoli, Local 74 and the Social Club see the Connollys' negligence claims as nothing more than Dram Shop claims which are not recognized under Delaware law.[93] They also deny premises liability for the same reason as Capozzoli – the fact that Ethan was not killed on the premises of the Banquet Center.[94]

## V.    DISCUSSION

Five general points of contention emerge from the parties' briefs and oral arguments: 1) whether any or all of the defendants had a duty to Ethen based on a theory of premises liability; 2) whether Delaware's prohibition of Dram Shop and Social Host liability necessarily forecloses all of the Connollys' tort liability claims; 3) whether any or all of the defendants had a duty to Ethan based on common law tort principles; 4) whether, to the extent any or all defendants had a duty to Ethan, that duty was breached; and 5) if any duty to Ethan was breached, whether the breach of that duty was the proximate cause of Ethan's death. The Court address each of these issues in turn, but does not address issues argued by the Sorority and the

---

[92] *Id.* at 21.

[93] Def. Plumbers & Pipefitters Local No. 74 Reply Br. Mot. Summ. J., D.I. 336 at 7-13.

[94] *Id.* at 14-15.

21

University relating to the Connollys' expert witnesses, Mr. Kolins and Dr. Pollard. While the Court has some sympathy for the positions of the Sorority and the University, the issues raised concerning the Connollys' experts are better resolved in the context of the motions *in limine*, which are now moot in light of the Court's decisions on the motions for summary judgment.

Additionally, it is necessary to address the state of the factual record about what Ethan did or did not do at the crush party. The Connollys provided an interrogatory answer in which they identified a number of people whom they represent have knowledge that Ethan was inside the Banquet Center and consumed alcohol at the event.[95] None of these witnesses was deposed by any party and the Connollys have not provided affidavits from any of them. The Connollys have proffered neither the substance, nor the details of any particular potential witness' testimony. Information such as how long Ethan remained at the party, how much he drank there, how he procured the alcohol, whether he had a wristband or not, and if so, how he obtained it, how visibly intoxicated he appeared at the party, when and how he left the party, who, if anyone observed him leave the party, and what he did after he left the party before he was killied is completely absent from the record. In short, the most the Connollys arguably can be said to have established as far as a factual record is that Ethan went to the crush party on a bus provided by the Sorority,

---

[95] Pltfs.' Ans. Br., D.I. 314 at 8, Ex. M at Ans. to Interrogatory 1.

went inside the Banquet Center, consumed an unknown amount of alcohol procured by unknown means, and left sometime before the party ended. In contrast, a strong argument can be made that the Connollys have not established even that much, since those facts are merely lawyers' representations about what potential witnesses would say. Nevertheless, the Courts accepts that the Connollys' representations, limited as they are, are true for purposes of deciding these motions.

Unfortunately for the Connollys, the near total lack of detail about what Ethan did at the crush event, and more importantly, what any of the defendants did at the crush event, leaves the allegations of the TAC either without evidentiary support or without relevance. These factual deficiencies otherwise might set the Court off on the task of parsing the minutiae of the TAC, while applying the requisite inferences in favor of the Connollys, in what likely would be a futile search for potential genuine issues of material fact for a jury's consideration. Ultimately, however, that task is unnecessary because it is clear to the Court that under no theory of liability advanced by the Connollys did any defendant breach any duty it owed to Ethan. Moreover, even if any defendant breached a duty it owed to Ethan, the proximate cause of Ethan's death was his own conduct, not the breach of a duty by any defendant.

### A. All Claims Based on Premises Liability Fail.

It seems tautological to say that in order for a business to be liable to a plaintiff on a theory of premises liability, the claimed injury must have occurred on the business' premises. Indeed, Delaware law is just so. In *Rogers v. Christiana School District*,[96] the issue before the court was whether the school district could be liable for the off-campus suicide of a student. There, the Delaware Supreme Court noted that Section 323 of the Restatement (Second) of Torts, which sets out the requirements for an assumed duty of care for another, such as one assumed by a business, only applies the duty of care to a person physically on the premises of the entity owing the duty.[97] Yet, the Connollys argue business premises liability claims against the Sorority, Capozzoli, Local 74 and the Social Club, and curiously, even the University (by incorporating the arguments they made in their opposition to the motions for summary judgment of Capozzoli and Local 74 and the Social Club.) These claims fail because Ethen was killed on Route 896, a public roadway, and not on the property of any defendant.

The cases cited by the Connollys to support their premises liability claims – *DiOssi, Furek,* and *Jardel, Inc. v. Hughes*[98] - do not support their position. Each of those cases addresses the defendants' liability in the context of injuries occurring on the defendants' property.

---

[96] 73 A.3d 1 at 7 (Del. 2013).
[97] *Id.* at 8-9.
[98] 523 A.2d 518 (Del. 1987).

24

Plaintiff Dion DiOssi appealed the Superior Court's decision granting the defendants' summary judgment motion.[99] The defendants were social hosts who employed the plaintiff to provide valet parking services for a large party at their house.[100] Hundreds of people attended the party, many of them too young to drink legally.[101] After the party, an intoxicated, underage party-goer struck the plaintiff while still on the defendants' property.[102] The Superior Court held that the defendants, as social hosts, had no duty to provide safe premises to the plaintiff.[103] The Supreme Court reversed in what it described as a "novel" holding, ruling that the defendants "had a duty to provide a reasonably safe work place for the plaintiff who was on the premises as a business visitor."[104] The Court cautioned, however:

> Because our holding sustaining a claim against a social host is a novel one, we deem it important to emphasize what we do not decide. Our holding may not be read to extend the liability of a social host for the injuries of other guests which are caused by tortious conduct attributable to the social host's dispensing of alcoholic beverages.
>
> Nor do we pass upon the liability of the social host (a) to third parties injured off the premises or (b) for the tortious acts of adult guests on the premises. Recovery in such instances implicates the extension of the liability of social hosts arising out of the mere dispensing of alcoholic beverages in the absence of a property nexus or the

---

[99] *DiOssi,* 548 A.2d at 1362.
[100] *Id.*
[101] *Id.*
[102] *Id.* at 1263.
[103] *Id.* at 1362.
[104] *Id.* at 1368-89.

25

involvement of minors. We leave such considerations to another day.[105]

*DiOssi*, then, recognizes a cause of action against a social host (and, presumably, a dram shop) on a premises liability theory, but not on a social host or dram shop theory. That cause of action must arise from an injury sustained on the defendant's property, because the duty of the defendant to the plaintiff only extends to providing safe premises while the plaintiff is present. The fact that Ethan was killed away from the Banquet Center means that *DiOssi* offers no support for any theory of premises liability against any defendant.

*Furek* was an action brought by a student for injuries sustained in a fraternity hazing incident at the University.[106] Furek suffered first and second degree chemical burns when a lye-based liquid oven cleaner was poured on his face, back, and neck during a fraternity "Hell Night" initiation.[107] After a trial at which the University and an individual fraternity brother were found liable for the Furek's injuries, the Superior Court granted judgment notwithstanding the verdict in favor of the University, leaving the individual defendant liable for the entire $30,000.00 award.[108] The primary issue on appeal was what duty the University had, if any, to

---

[105] *Id.* at 1369.
[106] *Furek,* 594 A.2d at 509.
[107] *Id.* at 509-10.
[108] *Id.* at 509.

protect Furek from the hazing activities of the fraternity and its members.[109] The Supreme Court considered and rejected at least two theories of liability against the University. Specifically, it rejected a theory of liability based on § 319 of the Restatement (Second) of Torts that the University had a duty to Furek based on a special relationship arising out of its responsibility to control third persons having dangerous propensities.[110] It also rejected a theory of liability based on Restatement § 324A relating to assumed duties since the duty the University assumed "to regulate and enforce hazing was not directed to, or intended as a substitute for, the duty owed by the fraternity to Furek."[111] The University's duty of rule promulgation and enforcement was separate from a duty the fraternity may have had to Furek.[112]

Nevertheless, the Supreme Court found that the University did have a duty to Furek based on two separate theories of liability. The Court held that the University had assumed a duty of protection based on Restatement § 323, which addresses the duty owed by one who assumes direct responsibility for the safety of another through the rendering of services in the area of protection.[113] Whether any defendant had such a duty toward Ethan is discussed below in Section V. C. The other duty the University was found to owe Furek was based on its status as the owner of the land

---

[109] *Id.* at 514.
[110] *Id.* at 519.
[111] *Id.* at 520.
[112] *Id.*
[113] *Id.*

27

on which the fraternity where the incident occurred was located. The University had a duty to regulate and supervise foreseeable dangerous activities on its property, a duty which extended to the negligent or intentional conduct of third parties, but was limited to instances where the University had control.[114] It is clear, therefore, that *Furek* cannot justify any theory of liability against any defendant here based on premises liability, since Ethan was killed elsewhere.

Finally, the third case cited by the Connollys, *Jardel*, is similarly unhelpful. The plaintiff in *Jardel* was an employee of a tenant in a shopping mall and was abducted and raped while leaving her employment.[115] The jury awarded damages against both the owner of the mall, Jardel Co., Inc., and its parent company in not providing adequate security in the mall parking lot.[116] At trial, Jardel acknowledged that the plaintiff was the beneficiary of its rental agreement with her employer and that the attack occurred on leased premises, but denied that it owed plaintiff a duty to provide for her safety.[117] The Supreme Court held, based on Restatement § 344, that while Jardel was not an insurer of public safety, it had a residual obligation of reasonable care to protect business invitees from the criminal acts of third persons.[118] *Jardel,* however, cannot be read to extend that residual duty of a possessor of land

---

[114] *Id.* at 522.
[115] *Jardel,* 523 A.2d at 521.
[116] *Id.* at 521-22.
[117] *Id.* at 523.
[118] *Id.* at 525.

to protect a business invitee from injuries sustained once the invitee has left the business premises, especially where the former invitee's injuries were occasioned by that person's own behavior.

**B.**      **Delaware's Prohibition on Dram Shop and Social Host Liability Forecloses All of the Connollys' Tort Liability Claims Where Ethan's Intoxication Forms the Basis of the Defendant's Liability.**

Delaware, despite repeated attempts to have it do so, has not recognized, either legislatively or judicially, a cause of action based on Dram Shop or Social Host liability.  On that point, all parties are agreed, making unnecessary a deep dive into Dram Shop and Social Host jurisprudence.  Nonetheless, the Connollys do claim common law tort liability against each defendant.  In order to understand why the absence of a Dram Shop Act or Social Host Act is such an impediment to liability here, it is necessary to look at the rationale for the exclusion.

In *Wright v. Moffitt*[119] the issue on appeal after the Superior Court had dismissed the complaint was whether a customer who purchased and drank alcohol in a tavern for about six hours, apparently being served even after he was intoxicated, had a cause of action, either at common law or statutorily, against the tavern owner for injuries he sustained when he left the bar on foot and was struck by an automobile crossing the highway outside of the tavern.[120]  The Delaware Supreme Court held

[119] 437 A.2d 554 (Del. 1981).
[120] The Court notes that the relevant facts in *Wright,* while approximating the relevant facts here, arguably present an even stronger case for liability.  Due to the

29

that no such cause of action existed in Delaware, noting that "generally, the common law did not enforce a cause of action against a tavern owner for personal injury to a patron (or third person) resulting from or 'caused' by the voluntary intoxication of the patron."[121] The Court quoted with approval, the Maryland Court of Appeals:

> Apart from statute, the common law knows no right of action against a seller of intoxicating liquors, such as, for "causing" intoxication of the person whose negligent or willful wrong has caused injury. Human beings, drunk or sober, are responsible for their own torts. The law (apart from statute) recognizes no relation of proximate cause between a sale of liquor and a tort committed by a buyer who has drunk the liquor.[122]

Put another way, it is the consumption of alcohol, not the sale of alcohol that is the proximate cause of any injuries sustained or caused by the intoxicated person.[123] The Supreme Court also declined to recognize a right of action based on violations of the Alcoholic Beverage Control Act since the legislative purpose of its relevant sections was to "protect the public, not to protect one who has drunk alcoholic beverages from the consequences of his own intoxication." [124]

---

procedural posture in *Wright,* the Court was required to take as true the allegation that Wright became intoxicated in the tavern. Here, while the Court must view the evidence in the light most favorable to the Connollys, far fewer facts are in the record to support an inference that Ethan became intoxicated at the crush party.
[121] *Wright,* 475 A.2d at 555.
[122] *Id.* (quoting *State v. Hatfield,* 78 A.2d 754, 756 (Md. Ct. App. 1951)).
[123] *Wright,* 437 A.2d at 555.
[124] *Id.* at 557.

In the nearly four decades since *Wright* was decided, neither the Supreme Court, nor the General Assembly has altered these basic principles. Whether the intoxicated person injured a third party after drinking at a bowling alley,[125] the intoxicated person was a minor who injured a third person after leaving a tavern,[126] the tavern-defendant undertook a duty not to leave a helpless intoxicated person, who later injured himself, in an unsafe position by taking physical control of that person,[127] or the intoxicated tortfeasor had consumed alcohol at the home of a social host as well as a tavern,[128] the immunity of those who served alcohol to either an intoxicated patron or guest (regardless of whether the patron or guest was a minor) was affirmed.[129]

Of particular relevance here is the Supreme Court's refusal in *McCall v. Village Pizza* to recognize a cause of action based on Restatement (Second) of Torts § 324[130] where the Court rejected an indirect attack on Dram Shop immunity through

---

[125] *Samson v. Smith,* 560 A.2d 1024 (Del. 1989).

[126] *Oakes v. Megaw,* 656 A.2d 914 (Del. 1989).

[127] *McCall v. Villa Pizza, Inc.* 636 A.2d 912 (Del. 1994).

[128] *Shea v. Matassa,* 918 A.2d 1090 (Del. 2007).

[129] The fact that the intoxicated guest who caused the plaintiff's injury in *DiOssi* was a minor was irrelevant to the court's determination that the defendants had a duty to provide a safe premises to DiOssi. The same duty would have obtained had the tortfeasor been an adult.

[130] Section 324 provides:

*Duty of One Who Takes Charge of Another Who is Helpless*

the application of § 324 to commercial vendors of alcoholic beverages.[131] The Court noted that it has "consistently held that there is no statutory or common law cause of action by one injured off the tavern premises by an intoxicated person, whether the injured person be the patron or a third-party."[132] "Positing tavern owner liability under § 324 implicates the same policy considerations we have repeatedly held are within the province of the legislature."[133]

The Connollys allege that the Sorority either owed or assumed a duty to Ethen to manage and oversee the activities of the Sorority in a reasonably prudent manner in general, and in particular, with respect to events involving alcohol.[134] All of the alleged breaches of those alleged duties, except two involving transporting Ethen to and from the crush event, involve providing him with alcohol.[135] Dram Shop and Social Host immunity bars those alcohol related claims.

---

One who, being under no duty to do so, takes charge of another who is helpless adequately to aid or protect himself is subject to liability to the other for any bodily harm caused to him by

(a) the failure of the actor to exercise reasonable care to secure the safety of the other while within the actor's charge, or

(b) the actor's discontinuing his aid or protection, if by doing so he leaves the other in a worse position than when the actor took charge of him.

[131] *McCall,* 636 A.2d at 913-14.
[132] *Id.* at 913.
[133] *Id.* at 914.
[134] TAC, D.I. 198, Count III at ¶¶ 54,55.
[135] *Id.,* Count III at ¶ 56.

The Connollys allege that the University owed Ethen the same duties as the Sorority.[136] They also allege that the University breached those duties in the identical manner that they allege the Sorority breached them.[137] For obvious reasons, the University makes no claim of Dram Shop or Social Host immunity, but bases its Motion for Summary Judgment on other grounds which are discussed elsewhere.

The Connollys' claims against Capozzoli, Local 74, and the Social Club are identical.[138] The only duties they allege these three defendants owed to Ethan are the same duties they allege the Sorority and University owed him.[139] Most of the specific allegations that these defendants breached these duties are allegations that they failed to prevent minors from obtaining or consuming alcohol at the Banquet Center.[140] Again, these allegations run afoul of the defendants' Dram Shop immunity and are barred. The Connollys also claim that these defendants failed to properly maintain, secure and monitor their premises.[141] This claim fails for the same reason that all claims of premises liability fail – Ethen was not killed at the Banquet Center. Finally, the Connollys claim that these three defendants breached a duty to Ethen by failing to prevent him from leaving the Banquet Center and failing

---

[136] *Id.,* Count V at ¶¶ 66,67.
[137] *Id.,* Count V at ¶ 68.
[138] *Id.,* Count VII at ¶ 79, Count VIII at ¶ 82.
[139] *Id.,* Count VII at ¶ 78, Count VIII at ¶ 81.
[140] *Id.,* Count VII at ¶ 79, Count VIII at ¶ 82.
[141] *Id.*

33

to ensure he returned to campus safely.[142]  These claims are an attempt to impose liability based on the theory that these defendants assumed a duty of protecting Ethan from harm away from their premises.  The Court views this argument as an impermissible attempt to circumvent Dram Shop immunity, something which Delaware has never permitted.

## C.    Defendants Owed Common Law Tort Duties to Ethen Only to the Extent They Assumed Such Duties.

It is clear that neither Capozzoli, Local 74, nor the Social Club assumed any duties toward Ethan for anything he did, or that happened to him, away from the Banquet Center.  The University not only did not assume any duty to Ethan, it expressly disclaimed any duty toward students engaged in off-campus drinking activities, warning students that it refused to accept responsibility for the use or consumption of alcoholic beverages by students off-campus at events sponsored by student organizations.[143]

The Sorority, however, did undertake to provide transportation from campus to the Banquet Center and back to campus.  In fact, the Sorority required attendees to ride the busses it provided.  The Connollys argue that this duty assumed by the Sorority necessarily included a duty to ensure that Ethan got on the bus after the event.  In *Furek,* the Supreme Court recognized that § 323 addresses the duty owed

---

[142] *Id.*

[143] Def. University of Delaware Op. Br. Mot. Summ. J., D.I. 267, Ex. 20 at 11-12.

34

by one who "assumes direct responsibility for the safety of another through the rendering of services in the area of protection."[144] The service in the area of protection by which the Sorority assumed direct responsibility for Ethan's safety was transporting him to and from the event. The reason the Sorority provided transportation is obvious. It did not want impaired attendees (including Ethan) driving to and from the event, which was beyond reasonable walking distance from campus, thereby endangering themselves and others. Providing safe bus transportation was the extent of the duty the Sorority assumed.

**D.    No Defendant Breached a Duty to Ethan.**

Having determined that the only Defendant owing a duty to Ethan that extended beyond the Banquet Center was the Sorority, the Court turns to the question of whether the Sorority breached that duty. In other words, did the Sorority breach the duty it assumed under § 323 to transport Ethen to and from the crush event safely? It did not. It is undisputed that Ethan was killed before the crush event ended and that the Sorority fulfilled its duty to provide transportation back to campus for all who remained at the party. This situation was not one where the Sorority left a grossly intoxicated Ethan behind at the Banquet Center. Nor was it one where the Sorority barred Ethan from getting on a return bus. It was Ethan's premature and volitional departure from the party that prevented him from taking advantage of the

---

[144] *Furek,* 590 A.2d at 520.

35

transportation service that the Sorority had provided. No Sorority member did anything that increased the risk of harm to Ethan or prevented him from taking advantage of the transportation service that defined the responsibility for Ethan's safety assumed by the Sorority.[145] The Court simply does not accept, nor find any warrant for, the Connollys' contention that the duty the Sorority assumed extended to preventing Ethan from leaving the Banquet Center, ultimately perhaps to the extent of restraining him if necessary.

### E. Ethan's Own Conduct Was the Proximate Cause of His Death.

The above discussion is arguably simply prologue to determining if the acts, or failures to act, of any defendant were a proximate cause of Ethan's death. No matter whether a defendant had a duty to Ethan, and no matter whether a defendant breached a duty to Ethan, if that breach was not a proximate cause of Ethan's death, no liability can be ascribed to that defendant.

To establish causation, the Connollys must prove that "a reasonable connection" exists "between the negligent act or omission of the defendant and the injury which the plaintiff has suffered," allowing for the possibility that there may be more than one proximate cause of an injury.[146] Delaware's "'time-honored definition of probable cause' has been the 'but for rule.'"[147] In Delaware, proximate

---

[145] *See Jain v. State,* 617 N.W. 2d 293 (Iowa 2000).

[146] *Culver v. Bennett,* 588 A.2d 1094, 1097 (Del. 1991).

[147] *Id.* (quoting *Chudnofsky v. Edwards,* 208 A.2d 516, 518 (Del. 1965)).

cause is defined as "...the direct cause without which the accident would not have occurred. More fully stated, it is to be determined, on the facts, upon mixed considerations of logic common sense, justice, policy and precedent."[148]

"But for" proximate causation is not limitless, however. "A proximate cause is one which in natural and continuous sequence, *unbroken by any efficient intervening cause*, produces the injury and without which the result would not have occurred."[149] Juxtaposed, then, against the concept of "but for" proximate causation is the countervailing notion of remote, or intervening/superseding, causation. A prior and remote cause will not support liability if the remote cause:

> did nothing more than furnish the condition or give rise to the occasion by which the injury was made possible if there intervened between such prior of remote cause and the injury a distinct, successive, unrelated and efficient cause of the injury even though such injury would not have happened but for such condition or occasion.[150]

While ordinarily questions of probable cause are to be submitted to the trier of fact for determination, that is so only if the inferences to be drawn from the undisputed material facts are reasonably capable of more than one conclusion.[151] Here, there can be but one conclusion of proximate cause. Informed by the

---

[148] *Chudnofsky,* 208 A.2d at 518.

[149] *Duphilly v. Del. Elec. Coop., Inc.* 662 A.2d 821, 829 (Del. 1995) (Internal citations omitted; emphasis in original.).

[150] *McKeon v. Goldstein,* 164 A.2d 260, 262 (Del. 1960).

[151] *Id.*

understanding that the common law recognizes no relationship of probable between the seller of alcohol and one who commits a tort after consuming the alcohol, and that "human beings, drunk or sober, are responsible for their own torts," the Court finds that Ethan's own volitional conduct was the sole proximate cause of his death. Every untoward consequence that befell Ethan on the night he died was a direct result of his own volitional conduct. It is beyond dispute that the reason Ethan stepped in front of the pick-up truck that killed him was his own gross impairment. He was responsible for "pre-gaming" with beer and tequila before the crush event. He was responsible for drinking at the event. He was responsible for the high levels of alcohol in his system. He was responsible for the marijuana detected in his urine. He was responsible for leaving the Banquet Center before the party ended. He was responsible for foregoing the safety of bus transportation back to campus. He was responsible for attempting to cross Route 896 approximately 90 feet from the crosswalk with lighted pedestrian signals. He was responsible for attempting that crossing without a flashlight or reflective clothing. Any other interpretation of those facts in order to ascribe liability to any of these defendants would require a radical reframing of the Court's understanding of proximate cause.

## VI.  CONCLUSION

Therefore, for the reasons set forth above, and because there are no issues of material fact and each movant is entitled to judgment as a matter of law, Defendant

38

Alpha Epsilon Phi Sorority, Individually and t/a Phi Chi Chapter's Motion for Summary Judgment is **GRANTED.** Its Motion for Summary Judgment Based upon Ethen Connolly's Reckless Conduct and Comparative Negligence is **MOOT.** Defendant University of Delaware's Motion for Summary Judgment is **GRANTED**. Defendant Capozzoli Catering of Delaware, Inc.'s Motion for Summary Judgment is **GRANTED**. Defendant Plumbers and Pipefitters Local No. 74's and Defendant Plumbers and Pipefitters Social Club's Motion for Summary Judgment is **GRANTED**.

    **IT IS SO ORDERED.**

_____
Ferris W. Wharton, J.